# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANCISCO NIEVES REYES, individually and on behalf of other persons similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CVS PHARMACY INC., CAREMARK RX LLC, CVS CAREMARK CORPORATION,<br><br>Defendant. | No. 1:13-cv-00420-AWI-GSA<br><br>**ORDER GRANTING PLAINTIFFS' MOTION TO REMAND ACTION TO STATE COURT**<br><br>(Doc. 7) |

**INTRODUCTION**

On January 30, 2013, Plaintiffs initiated this class action in Stanislaus County Superior Court (Case number 680978). Plaintiff, Francisco Nieves Reyes individually, and on behalf of others similarly situated (collectively "Plaintiffs"), allege four state law causes of action, including: 1) forfeiture of vacation, 2) unfair competition, 3) failure to pay all wages owed upon termination, and 4) failure to pay final wages timely on termination against Defendants CVS Pharmacy, Inc. and CVS Caremark Corporation (erroneously sued as Caremark RX LLC) (hereinafter, "Defendants"). (Doc. 1-2, pgs. 9-20).

Plaintiffs are former California CVS Pharmacy Inc. and CVS Caremark Corporation employees, who accrued vacation benefits during their employment with CVS and whose employment terminated within four years of the filing of the lawsuit. For purposes of this

1

motion, the parties agree that Plaintiffs' causes of action can be broken down into two primary claims : 1) forfeiture of vacation in violation of Labor Code Section 227.3 (which gives rise to derivative claims for unfair competition and failure to pay all wages upon termination); and 2) failure to pay unused floating holiday benefits timely upon termination in violation of Labor Code Sections 201 or 202 (which gives rise to claims for waiting time penalties under Labor Code Section 203). Plaintiffs plead no federal causes of action. Moreover, Plaintiffs' allegations on their face raise no federal claims, and there is no alleged diversity of citizenship to bring the case within the jurisdiction of this Court.

Defendants removed this case to federal court claiming that the allegations in Plaintiffs' complaint brings it within Section 301 of the Labor Management Relations Act (29 U.S.C. § 185(a)) ("LMRA") and raises federal questions that are subject to this Court's jurisdiction. (Doc. 1). In particular, Defendants argue that several collective bargaining agreements ("CBA") between the parties must be interpreted in order to resolve Plaintiffs' claims thereby bringing this case within the parameters of the LMRA.

Pending before the Court is Plaintiffs' Motion to Remand. (Doc. 7). Plaintiffs contend that their complaint seeks to enforce non-negotiable statutory protections and rights which arise exclusively out of state law and exist independently of the CBA. The Plaintiffs further argue that Section 301 preemption does not result simply because the CBA may be consulted in the course of proving this case.

After considering the Defendant's Opposition to the Motion for Remand (Doc. 10) and Plaintiffs' Reply (Doc. 11), this Court determined the matter was suitable for decision without oral argument pursuant to Local Rule 230(g) and took the matter under submission. (Doc. 12). Upon a review of the pleadings, this Court GRANTS Plaintiffs' Motion to Remand.

///

**LEGAL STANDARD**

*A.     Removal Generally*

Title 28 of the United States Code section 1441(a) provides that a defendant may remove "any civil action brought in a State court of which the district courts . . . have original jurisdiction . . . ."  Removal is proper when a case originally filed in state court presents a federal question or where there is diversity of citizenship among the parties and the amount in controversy exceeds $75,000.  *See* §§ 1331, 1332(a).

Section 1447(c) provides that "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."  "The removal statute is strictly construed against removal jurisdiction [and] [t]he defendant bears the burden of establishing that removal is proper."  *Provincial Gov't of Marinduque v. Placer Dome, Inc*., 582 F.3d 1083 (9th Cir. 2009).  The Ninth Circuit has held that "[w]here doubt regarding the right to removal exists, a case should be remanded to state court."  *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003).

A motion to remand is the proper procedure for challenging removal.  *Babasa v. LensCrafters, Inc*., 498 F.3d 972, 974 (9th Cir. 2007).  If a defendant has improperly removed a case over which the district court lacks subject matter jurisdiction, the district court shall remand the case to the state court.  § 1447(c); *see also Durham v. Lockheed Martin Corp*., 445 F.3d 1247, 1252 (9th Cir. 2006) (noting that a district court resolves all ambiguity in favor of remand).  However, a district court lacks discretion to remand a case to the state court if the case was properly removed.  *Carpenters S. Cal. Admin. Corp. v. Majestic Hous*.,743 F.2d 1341, 1343 (9th Cir. 1984); *see also Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 356 (1988).

"The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule....' " *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987).   The well-pleaded

3

complaint rule recognizes that the plaintiff is the master of his or her claim. "[H]e or she may avoid federal jurisdiction by exclusive reliance on state law." *Id*. While a defense of preemption, also known as "ordinary preemption," is insufficient to demonstrate removal jurisdiction, "complete preemption," which is a corollary to the well-pleaded complaint rule, would be a sufficient basis for removal. *Rains v. Criterion Sys., Inc*., 80 F.3d 339, 344 (9th Cir.1996). Under the complete preemption doctrine, the force of certain federal statutes is considered to be so "extraordinary" that it "converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 65 (1987). Section 301 is a federal statute that can have complete preemptive force. *Avco Corp. v. Aero Lodge No*. 735, 390 U.S. 557, 558–562 (1968).

### B. Section 301 of the LMRA

Section 301 of the LMRA in relevant section provides the following :

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties. 28 U.S.C. § 185(a).

In order to determine whether Section 301 preemption applies, an inquiry into whether the asserted causes of action involve rights conferred upon by an employee by virtue of state law, or by a CBA. If the right exists solely as a result of the CBA, then the claim is preempted, *Burnside v. Kiewit Pacific Corp.*, 491 F. 3d 1053, 1059 (9th Cir. 2007). If however, the claim exists independently of the CBA, it must be determined whether the right is "substantially dependent on the analysis of the CBA." *Id.* citing *Caterpillar Inc*., 482 U.S. 394. "If such a dependence exists, then the claim is preempted by section 301; if not then the claim can proceed under state law." *Brunside v. Kiewit Pacific Corp*., 491 F. 3d at 1059-1060. The LMRA preempts a state-law claim

"if the resolution of [that] claim depends upon the meaning of a collective-bargaining agreement." *Ramirez v. Fox Television Station, Inc.*, 998 F.2d 743, 748 (9th Cir.1993) (quoting *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 405–06 (1988)).  In determining whether section 301 preemption applies, "[t]he plaintiff's claim is the touchstone for [the] analysis; the need to interpret the [collective bargaining agreement] must inhere in the nature of the plaintiff's claim.  If the claim is plainly based on state law, § 301 preemption is not mandated simply because the defendant refers to the [collective bargaining agreement] in mounting a defense." *Cramer v. Consol. Freightways, Inc.*, 255 F.3d 683, 691 (9th Cir. 2001).  To determine whether a particular right inheres in state law or instead, is grounded in a CBA, a court should consider "the legal character of a claim, as 'independent' of rights under the collective-bargaining agreement [and] not whether a grievance arising from 'precisely the same set of facts' could be pursued." *Burnside v. Kiewit Pacific Corp.*, at 1060 citing *Livadas v. Bradshaw*, 512 U.S. 107, 123 (1994).

Further, a "reference to or consideration of the terms of a collective-bargaining agreement is not the equivalent of interpreting the meaning of the terms." *Ramirez v. Fox Television Station, Inc.,* 998 F.2d at 749. "Causes of action that only tangentially involv[e] a provision of a collective bargaining agreement are not preempted by section 301.  Nor are causes of action which assert nonnegotiable state-law rights ... independent of any right established by contract." *Id*. at 748 (citations and internal quotation marks omitted).   Thus, as the Ninth Circuit observes, "[t]he demarcation between preempted claims and those that survive § 301's reach is not ... a line that lends itself to analytical precision." *Cramer v. Consol. Freightways, Inc.*, 255 F.3d at 691.
 "'Substantial dependence' on a CBA is an inexact concept, turning on the specific facts of each case, and the distinction between 'looking to' a CBA and 'interpreting' it is not always clear or amenable to a bright-line test." *Id*.; *Gregory v. SCIE, LLC.*, 317 F. 3d 1050, 1052 (9th Cir. 2003 ) (Section 301 only preempts state law claims when plaintiff's allegations are "substantially

dependent" on an interpretation of the CBA).

## DISCUSSION

### A. Summary of the Plaintiffs' Claims Relevant to this Motion

On or about January 30, 2013, Plaintiff filed this class action representing a class comprised of the following:[1]

> All persons who worked for CVS Caremark in the State of California, whose employment with CVS Caremark ended at any time since the date four years prior to the filing of this complaint, who accrued vacation benefits during their employment with CVS Caremark.

In the complaint, Plaintiffs allege that because CVS calculated vacation accruals on a monthly basis, when an employee was terminated without having completed his last monthly period of work, the employee did not get paid the vested, but unused, vacation time that he or she accrued during the month. (Doc. 1-2, pg. 22 at ¶ 4). Plaintiffs contend that this resulted in an unlawful forfeiture of vested, but unused, vacation benefits under California Labor Code § 227.3.

California Labor Code § 227.3 provides as follows :

> Unless otherwise provided by a collective-bargaining agreement, whenever a contract of employment or employer policy provides for paid vacations, and an employee is terminated without having taken off his vested vacation time, all vested vacation shall be paid to him as wages at his final rate in accordance with such contract of employment or employer policy.

Cal. Labor Code § 227.3.

### B. Defendants' Position

In support of the removal, Defendants argue that Plaintiffs' claims are solely dependent upon an interpretation of a collective bargaining agreement between Longs Drugs Store, LLC, d/b/a CVS Pharmacy and the International Brotherhood of Teamsters, Local 286 Union ("the

---

[1] It also appears that there are two other classes in this lawsuit : 1) an unpaid final wage class, and 2) a late final wages class. These classes are not included in this order as they are not directly implicated in the pending motion. (Doc. 1-2, pg. 12-13, ¶ 11).

6

Patterson Agreement"). They contend that the putative class members were subject to CBAs that provide for an alternative scheme for calculating separation vacation pay and for circumstances under which putative class members' rights to separation vacation pay are waived.  Therefore, Plaintiffs' class-wide "forfeiture of vacation claims" arise from CBAs that fall within the purview of Section 301; the Court will have to interpret the collective bargaining agreements governing Plaintiffs' employment to determine how, when, and at what rate Plaintiffs' vacation vested.

In addition to the Patterson Agreement referenced above,  Defendants argue that there are at least two other CBAs  at issue here:  1)  the "La Habra Warehouse Agreement" that governs persons, janitors, and office-clerical employees at the company's La Habra, California facilities, and 2) the "La Habra Drivers' Agreement" that governs drivers at that same location.[2] (Doc. 10, pg. 7).  All three of these agreements set forth conditions of employment for their respective bargaining units including vacation benefits, the rate and manner of vacation benefits accrual, and the treatment of earned, but unused, vacation upon employees' termination.  *Id*.

Specifically, the Patterson Agreement sets forth the basis of Plaintiffs accrued vacation time by stating that, "[r]egular full time employees are eligible to receive vacation time and pay based on their average hours worked per week up to a maximum of 40 hours a week." Belva Biagas declaration (" Biagas Dec'l"), Human Resources Manager for the CVS Caremark distribution center in Patterson, California, Ex. 1, Article 25, Section 2. (Doc. 1-3, pg. 27-28). The Patterson Agreement also includes implied terms that arise from practices, usage, and customs, as well as industry norms acceptable to both sides that were omitted from the terms of the CBA that govern how Plaintiffs' vacation vested.  (Biagas Dec'l, Doc. 1-3, pg. 2, ¶ 1).

Additionally, under the La Habra Warehouse Agreement, employees are eligible to accrue vacation based on the length of their tenure with CVS.  The agreement sets forth the rate and

---

[2] Defendant indicates that there may be other collective bargaining agreements governing other putative class members, however, these collective bargaining agreements were not identified in Defendants' pleadings.

manner of such accrual and provides that "[u]npaid vacation shall not be paid upon discharge for dishonesty." Declaration of Chuck Martin ("Martin Dec'l), Director of Labor Relations and Compliance for CVS, Ex. 1 at Article 10.4 and 10.6.  The agreement also provides that when an employee is separated from the company, he or she will receive unused earned and accrued vacation pay as of their termination date based on the number of weeks worked that year. *Id.* at Article 10.6.

Similarly, the La Habra Drivers' Agreement states that employees are eligible to accrue vacation time based on the length of their tenure with CVS, and sets forth the rate and manner of accrual.  The La Habra Drivers' Agreement provides that an employee who: 1) is absent more than twenty five days in the same twelve month period, 2) fails to work for CVS for a full year, or 3) is discharged for dishonesty or intoxication, forfeits all vacation benefits. *Martin Dec'l*, Ex. 2 at Article X, Section B, F. (Doc. 10-1 pgs. 64-65). Likewise, the Drivers' agreement also states that when an employee separates from the company, he or she will receive unused earned and accrued vacation pay as of their termination date based on the number of weeks worked that year. *Id*. at Article X, Section A. (Doc. 10-1, pg. 64).

Numerous employees in the putative class were subject to the aforementioned CBAs. Defendant contends that since § 227.3 explicitly states, "unless otherwise provided by a collective-bargaining agreement," the requirement that employees be paid for all vested, but untaken, vacation time under this section is inapplicable.  Because the putative class members' right to relief for forfeiture of vacation pay exists solely as a result of the CBA, Defendants argue that the Court has subject matter jurisdiction under § 301 of the LMRA.

Additionally, Defendants contend that resolution of Plaintiffs' forfeiture of vacation claims also requires an interpretation of the CBA because the Court will have to determine how much vacation putative class members had vested at the time of their separation from CVS.  Here,

8

the vesting of Plaintiffs' vacation is governed by the Patterson agreement which states that "[r]egular full time employees are eligible to receive vacation time and pay based on their average hours worked per week up to a maximum of 40 hours a week." *Biagas Dec'l.*, Exhibit 1, Article 25, Section 1 (Doc. 1-3, pg. 27-28). Defendants argue that under this provision, a court cannot conclude whether Plaintiffs' vacation vested with every hour worked, every day worked, every week worked, or with some other variable of time without analyzing and interpreting the Patterson agreement, including examining the parties' negotiation history, past practices, usage, custom, and industry norms governing vacation pay. Finally, Defendants contend that because the Court has jurisdiction over Plaintiffs' forfeiture to vacation claims, supplemental jurisdiction exists over the remaining claims for unfair competition, failure to pay all wages owed upon termination, and failure to pay final wages timely upon termination.

### C. Plaintiffs' Position

Plaintiffs argue that Defendants have failed to meet their heavy burden to justify removal because forfeiture of vacation claims are based only on California law. Thus, resolution of the Plaintiffs' forfeiture of vacation claims requires nothing more than: 1) looking to the CBA to see what the vacation accrual rate was, and 2) performing the mathematical calculation necessary to determine whether Defendants paid Plaintiffs the full amount for unused vacation that had vested prior to termination. Since no contractual interpretation is necessary, federal court jurisdiction is not proper.

### D. Analysis

As previously noted, the Ninth Circuit has set forth a two-step inquiry into whether Section 301 preempts a state law claim. *Burnside* v. *Kiewit Pacific Corp.*, 491 F.3d at 1059. First, the Court determines "whether the asserted cause of action involves a right conferred upon an employee by virtue of state law, not by a [collective bargaining agreement]." *Id*. "If the right

exists solely as a result of the CBA, then the claim is preempted, and [the] analysis ends there." *Id*. "If, however, the right exists independently of the" collective bargaining agreement, a court must "still consider whether it is nevertheless 'substantially dependent on analysis of a collective-bargaining agreement. " *Id*.

Defendants argue that preemption exists because Plaintiffs' claims are based solely on the CBAs. The Court disagrees. Here, the choice of language in § 227.3, "unless otherwise provided by a collective-bargaining agreement," militates against Defendants' argument that the right at issue is created solely by the collective bargaining agreement. If no collective bargaining agreement exists, the right to be paid for vested vacation time is codified in Cal. Labor Code § 227.3. Thus, this right exists entirely independently of any collective bargaining agreement. *See, Burnside v. Kiewit Pacific Corp*., 491 F. 3d at 1064. Moreover, under California law, this right is relinquished only if the CBA unmistakably waives that right. *Chaote v. Celite Corp*. (2013) 215 Cal. App. 4th 1460. Here, since the right exists independently from the collective bargaining agreement, the preemption analysis focuses on whether an analysis is substantially dependent on the collective bargaining agreement.

In *Choate v Celite Corp*, the California Second District Court of Appeal squarely addressed this issue as it relates to § 227.3 and § 203 claims. The Court established that to waive rights under Section 227.3, a CBA must do so "in clear unmistakable terms*." Choate v. Celite Corp.,* 215 Cal. App. at 1462. In particular, the Court correctly noted that a claim is substantially dependent upon an analysis of the agreement if it requires interpretation. The word interpret is narrowly defined and an action will not be preempted just because the court needs to "consider," "refer to," or "apply" one or more terms of a collective bargaining agreement. *Choate v. Celite Corp*., 215 Cal. App. at 1462 citing *Balcorta v. Twentieth Century – Fox Film Corp.*, 208 F.3d 1102, 1108 (9th Cir. 2000). The Court explicitly held :

> Plaintiffs' claims for waiting time penalties under sections 227.3 and 203 is not preempted. The claim is based solely on state law. More to the point, resolving that claim only requires a court to ascertain whether the Agreements contain clear and unmistakable language waving Plaintiffs' rights to "vested vacation time." Checking to see whether the Agreements affirmatively mention section 227.3 or its protections does not entail interpretation. Celite argues that a more in-depth inquiry into the parties' mutual intent and past practices would require interpretation, but the clear and unmistakable waiver standard we have adopted makes such probing irrelevant and hence unnecessary.
>
> *Choate v. Celite Corp.*, 215 Cal. App. at 1469.

As Defendants correctly note, this Court is not bound by California appellate court rulings. *See*, *Guebara v. Allstate Ins. Co.*, 237 F.3d 987, 993 (9th Cir. 2001). However, the *Choate* decision is instructive as it correctly interprets principles of federal preemption law and applies them to the statutes at issue in this case.[3] Similarly, the Court is not persuaded by Defendants' arguments that the *Choate* decision is not relevant because *Choate* did not address the issue of whether the right to payment for vacation vests on a daily basis in a situation like this one, where the collective bargaining agreement provides for an alternative vesting schedule. The California Supreme Court has addressed this issue in *Saustez v. Plastic Dress-Up Co.* (1982) 31 Cal. 3d 774, 784, and held that the right to payment for vacation time under § 227.3 vests as labor is rendered.

Here, Defendants argue that the ruling in *Saustez* does not apply because the Patterson Agreement controls and provides that "[r]egular full time employees are eligible to receive vacation time and pay based on their average hours worked per week up to a maximum of 40 hours a week." Defendants contend that the Patterson Agreement, as well as the negotiation history, past practices and industry norms, among other things, will need to be interpreted and

---

[3] Although Defendants urge this Court to consider the reasoning outlined in *Barton v. Creasey Co. of Clarksburg* (N.D. W. Va. 1989) 718 F. Supp. 1284, the reasoning is not as persuasive as *Choate* since *Barton* involved a statute other than Cal. Labor Code § 227.3. Similarly, the Court is not persuaded by Defendants citation to *Chissie v. Winco Foods,* LLC, 2012 WL 487652 (E.D. Cal. Feb. 14, 2012), since this case was decided prior to *Choate v. Celite Corp.*

considered to determine whether Plaintiffs' vacations vested with every hour worked, every day worked, every week worked or some other variable of time.  However, Defendants have failed to identify with specificity what policies, practices, or industry norms existed that are relevant to this analysis.

Furthermore, the CBAs' provisions are not so ambiguous that the agreement would require interpretation.  To the contrary, a court could consider California case law, the California Labor Codes, and refer to, and apply the terms of the CBAs to resolve these issues.  Looking to the CBA merely to discern that none of its terms is reasonably in dispute, or the simple need to refer to bargained-for wage rates is not enough to warrant preemption.  *Livadas v. Bradshaw*, 512 U.S. at 124-125. Similarly, "a court may look to the CBA to determine whether it contains a clear and unmistakable waiver of state law rights without triggering [section] 301 preemption." *Burnside v. Kiewit Pacific Corp*., 491 F. 3d at 1060 citing *Cramer v. Consol Freightways, Inc*., 255 F 3d at 692.

In summary, the Ninth Circuit has clearly established that "[a] state law claim is not preempted under 301 unless it necessarily requires the Court to interpret an existing provision of a CBA that can be reasonably said to be relevant to the resolution of the dispute."  *Cramer v. Consolidated Freightways, Inc*. 255 F. 3d 683, 693 (9th Cir. 2001).  The Defendants have not clearly established that this is the case for any of the causes of action alleged in the complaint. Defendants bear the burden of establishing that removal is proper.  The removal statute is strictly construed against removal jurisdiction.  Where there is doubt that removal is appropriate, as is the case here, a case should be remanded to state court. *Provincial Gov't of Marinduque v. Placer Dome, Inc*., 582 F.3d at 1083; *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d at 1089. Thus, Plaintiffs' motion should be granted.

///

**ORDER**

For the reasons stated above, Plaintiffs' Motion to Remand is GRANTED. Accordingly, the Clerk of the Court is directed to close this action and remand this case to the Stanislaus County Superior Court.

IT IS SO ORDERED.

Dated:   **February 11, 2014**             **/s/ Gary S. Austin**
                                  UNITED STATES MAGISTRATE JUDGE